**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **DEBORAH T. RIGGAN,** § | | |
| Plaintiff, § | | |
| § | | |
| v. § | No. 3:08-CV-0661-B (BF) | |
| § | ECF | |
| **COMMISSIONER, SOCIAL** § | | |
| **SECURITY ADMINISTRATION,** § | | |
| Defendant. § | | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

The District Court referred this case to the United States Magistrate Judge for findings, conclusions, and recommendation, pursuant to 28 U. S. C. § 636(b). This is an appeal from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying the claim of Deborah T. Riggan ("Plaintiff") for disability insurance benefits (DIB) under Title II of the Social Security Act ("Act") and supplemental security income (SSI) under Title XVI of the Act. The Court considered "Plaintiff's Opening Brief," filed July 11, 2008, "Defendant's Brief," filed July 25, 2008, and "Plaintiff's Reply," filed August 11, 2008. After reviewing the record, the Court recommends that the District Court affirm the Commissioner's decision.

**I.    Background**

    **A.    Procedural History**

On January 19, 2005, Plaintiff filed applications for Title II and Title XVI benefits, alleging an amended disability onset date of April 1, 2005. (Tr. 138.) Plaintiff claimed she was disabled due to degenerative disc disease, post right foot fracture, depression, obesity, chronic pain syndrome, and diabetes mellitus. (Tr. 16, 85, 452-53, 455.) Plaintiff obtained a general education development diploma ("GED"), attended technical school for computer operations, and had past relevant work

experience as a computer systems analyst and a computer setup specialist. (Tr. 475.) The Administrative Law Judge ("ALJ") conducted a hearing on May 16, 2007. The three witnesses who testified were Plaintiff, a medical expert ("ME"), and a vocational expert ("VE"). (Tr. 14, 447.) Plaintiff was 50 years old at the time of the hearing. On November 7, 2007, the ALJ issued an unfavorable decision. (Tr. 16-19.) The ALJ determined that Plaintiff's degenerative disc disease, post right foot fracture, depression, obesity, diabetes mellitus, and chronic pain syndrome were severe impairments; however, he also decided that the impairments, considered alone or in combination, did not meet or equal the requirements of any listed impairment. (*Id.*) The ALJ found at step four that Plaintiff could perform her past relevant work as a computer systems analyst and, thus, was not disabled under the Act. (Tr. 24.)

**B.** **Relevant Medical Evidence**

In November 2003, Plaintiff had lumbar surgery. (Tr. 331.) A February 2005 record indicated that Plaintiff received treatment for a mental condition but that the mental condition did not impose more than minimal limitations. (Tr. 221.) Further, her mental condition imposed no functional limitations. (*Id.*) On June 3, 2005, Plaintiff had no swelling, effusion, or redness in her peripheral joints; however, x-rays of her cervical spine showed degenerative disc disease at C6-7. (Tr. 331-32.) During a June 23, 2005 examination, she experienced muscle spasm and tenderness over the cervical area, intact sensation in the upper extremities, mild tenderness to palpitation over the lumbar spine, and positive straight leg raising. (Tr. 380-381.) A June 28, 2005, computed tomography (CT) scan noted no suggestion of disc herniation, spinal canal stenosis, or significant forminal stenosis at any level. (Tr. 332.)

Dr. Robert Goldberg, M.D., an orthopedic surgeon who examined Plaintiff once, concluded

2

that she should be referred to a rheumatologist and a pain clinic. (Tr. 332, 348.) He noted that she complained of discomfort with manipulation of her knees, feet, elbows, and right hip; that she limps when attempting a toe gait; and that she was not able to do a heel gait at all. (Tr. 332.) He further noted some modest spondylosis above and below C6-7 and observed that Plaintiff could not squat or hop on either leg and that when attempting tandem gait, she performed it very poorly and demonstrated poor balance. (*Id.*)

Plaintiff's treating physicians at Parkland Health and Hospital System ("Parkland") noted that Plaintiff had a history of arthritis, anxiety, depression, fibromyalgia, and chronic pain syndrome. (Tr. 395-439). Plaintiff submitted an additional document to the Appeals Council, a medical record from her treatment at Parkland dated December 18, 2007. (Tr. 8.)

The ALJ also considered state agency assessments from DDS physicians Eun Kwun, M.D. (Tr. 340-47) and K. Samaratunga, M.D. (Tr. 349-56). Additionally, he considered the psychiatric review of state agency psychologist Wallace Lee, M.D. (Tr. 357-70), medical opinions from the testifying ME (Tr. 469-74), and medical opinions from examining physicians Patricia Fontenot, M.D. (Tr. 221-36), Dr. Jose A. Duarte, Jr. (Tr. 379-81), and Thomas J. Cornell, M.D. (Tr. 384). (Tr. 17-18, 22-23.)

### C. The ALJ's Decision

Based on the evidence as a whole, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform work at the light level where she could alternate sitting and standing every thirty minutes. (Tr. 19.) The ALJ determined that Plaintiff could not operate foot controls, climb, use ladders or scaffolds, and she could not stoop, bend, squat, or kneel, but she could occasionally crouch and crawl. (*Id.*) The ALJ determined at step four, based in part upon

3

VE testimony, that Plaintiff's RFC did not preclude her from performing her past relevant work as a computer analyst, as it is generally performed. (Tr. 24.) As such, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act at any time. (*Id.*) Plaintiff appealed the ALJ's decision to the Appeals Council (Tr. 9). The Appeals Council denied the request for review on February 15, 2008. (Tr. 5-8.) The ALJ's decision became the Commissioner's final decision for purposes of judicial review. (*Id.*)

## II. <u>Standard of Review</u>

A claimant must prove that she is disabled for purposes of the Social Security Act to be entitled to social security benefits. *Leggett v. Chater*, 67 F.3d 558, 563-64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work she has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove her disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. In this case, the ALJ determined that Plaintiff had not met her burden at step four to prove her disability under the Act.

The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C.A. § 405(g). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not re-weigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

## III. Analysis

### Whether the ALJ Erred by Failing to Give Appropriate Weight to the Opinions of Plaintiff's Treating Physicians and By Failing to Make Any Findings Establishing Good Cause for Failing to Do So

Plaintiff alleges that the ALJ erroneously determined the severity of her impairments by refusing to afford controlling weight to the medical opinions of her treating physicians and to make any findings establishing good cause for failing to do so. (Pl.'s Br. at 15.) The Commissioner

argues that Plaintiff waived this argument because Plaintiff does not identify the treating physicians to whom she refers in her brief-in-chief.[1] *See Perez v. Barnhart*, 415 F.3d 457, 462 n.4 (5th Cir. 2005) (a claimant may waive an argument on appeal due to inadequate and poor briefing). The Court agrees that Plaintiff's argument is vague. Nevertheless, assuming that Plaintiff did not waive her first ground for relief, her argument lacks merit for the reasons that follow.

The ALJ recognized Dr. Goldberg as a treating source. (Tr. 22.) Dr. Goldberg examined Plaintiff on June 3, 2005. (*Id*.) He noted "no evidence of particular swelling, effusion, or redness about her peripheral joints." (*Id*. 331.) In his report of the examination ("report"), he did not diagnose her with arthritis or fibromyalgia. Rather, he stated that as an orthopedic surgeon, he probably could not help her and recommended that she see a rheumatologist and go to a pain clinic. (*Id*. 332.) Dr. Goldberg also filled out a form for the Texas Health and Human Services Commission ("form") in which he found her primary diagnosis to be "multiple arthritis" and secondary diagnosis to be "fibromyalgia," although he had failed to give this diagnosis in the report or to identify the underlying basis for this diagnosis. (Tr. 348.) He opined that Plaintiff was permanently disabled from work and noted certain activity restrictions. (*Id*.)

Dr. Siddiqui treated Plaintiff on January 23, 2007. (Tr. 395-96, 428-39, 434-35.) Dr. Siddiqui included in his diagnosis anxiety disorder/depression/fibromyalgia, chronic fatigue

---

[1] In her reply brief, Plaintiff identifies her treating physicians as Robert Goldberg, M.D. ("Dr. Goldberg") and Sadia Sajid Siddiqui, M.D. ("Dr. Siddiqui") from Parkland Health & Hospital Services ("Parkland"). (Pl.'s Reply Br. at 5.) Dr. Goldberg performed a one-time examination of Plaintiff, explaining that "she is now trying to get social security disability and was advised to see an orthopedic surgeon for documentation." (Tr. 331.) Dr. Siddiqui monitored Plaintiff's elevated blood pressure and her diabetes and treated her for ear infections and a vaginal discharge. (Tr. 395-96, 428-39.)

syndrome, and chronic pain syndrome. (*Id*. 434-35.) However, his diagnosis is unsupported by clinical, laboratory, or diagnostic techniques. Dr. Siddiqui was treating Plaintiff for an ear infection. (*Id*. 434-35.) Parkland records also show that Plaintiff had lab tests on February 16, 2007 (Tr. 397-403, 432-35). On March 7, 2007, she presented with pain in her shoulder and legs, and Dr. Siddiqui noted that she had stopped taking her high blood pressure medicine two weeks before. He asked her to monitor her blood pressure and to keep a log of her sugar intake. (Tr. 438-39.) On May 4, 2007, she presented with right ear pain and a vaginal discharge. (Tr. 436-37.) The doctor ordered a pap smear and noted wax impaction in her ear. (*Id*.) A record submitted to the Appeals Counsel shows a panic attack on December 18, 2007, for which a nurse referred Plaintiff to her psychologist. (Tr. 446.)

The ALJ recognized that the opinions, diagnoses, and medical evidence of a treating physician should be accorded considerable weight in determining disability and that the opinion of a specialist generally is accorded greater weight than that of a non-specialist. (Tr. 21.) However, the ALJ also found that such opinions are not entitled to deference if they are conclusory and not supported by clinical and laboratory findings. (Tr. 22.) Importantly, the ALJ noted that a treating physician's opinion may be accorded little or no weight when good cause is shown. (*Id*.)

In this case, the ALJ found good cause for not assigning significant weight to Dr. Goldberg's functional limitations in the form because (1) his diagnosis of arthritis was not supported by evidence, and (2) fibromyalgias are not a medically determinable impairment. (*Id*.) However, he did accept Dr. Goldberg's limitation that Plaintiff could not squat. (Tr. 17, 19, 332.) The ALJ explained that he assigned substantial weight to the non-examining state agency physicians' opinions, even more weight that he assigned to that of the ME, Dr. Vorhies, who assigned no

7

functional limitations to Plaintiff's physical impairments. (Tr. 22-23.)

Significantly, an opinion that a claimant is disabled or unable to work, such as that contained in Dr. Goldberg's form, is an opinion on the legal issue that is reserved for the Commissioner, and accordingly, such an opinion is never entitled to "controlling weight." *See* 20 C.F.R. § 21 404.1527(e). *See also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (explaining that "some opinions by physicians are not medical opinions, and as such have no 'special significance' in the ALJ's determination" (citing 20 C.F.R. § 404.1527(e) & (e)(3)) and that "[a]mong the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work'" (citing 20 C.F.R. § 404.1527(e)(1))). Accordingly, the ALJ must consider all medical opinions in determining the disability status of a benefits claimant. 20 C.F.R. §§ 404.1527(b), 416.927(b). However, an opinion on the ultimate issue, such as the claimant's disability status under the regulations, is reserved exclusively to the ALJ. *See* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). Further, "[p]rocedural perfection in administrative proceedings is not required. [A] court will not vacate a judgment unless the substantial rights of a party have been affected. . . . The major policy underlying the harmless error rule is to preserve judgments and avoid waste of time." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

Plaintiff contends that reversal is required because the ALJ did not apply the factors set forth in § 404.1527(d) when discussing the treating physicians' opinions. The ALJ in this case did not summarily reject the medical opinions of Plaintiff's treating physicians based only on the testimony of a non-specialty medical expert who had not examined the claimant. The record in this case contains "competing first-hand medical evidence" that Plaintiff has experienced no redness or swelling in any joint, and that her physical examinations have been unremarkable. (Tr. 18, 331-32,

8

432, 434-435, 438.) Under these circumstances, the § 404.1527(d) analysis was not required. *Newton*, 209 F.3d at 458. Although Dr. Goldberg's form indicates he diagnosed arthritis, the mere mention of a condition in the medical records does not establish a disabling impairment or even a significant impact on that person's functional capacity. *See Hames v. Harper*, 707 F.2d 162, 165 (5th Cir. 1983) (noting that the mere presence of some impairment is not disabling per se. The claimant must show that he is so functionally impaired by the impairment that he is precluded from engaging in any substantial gainful activity).

The record as a whole does not show that the ALJ failed to give appropriate weight to the opinions of Plaintiff's treating physicians, failed to establish good cause for the weight he gave them, or that Plaintiff was prejudiced. Plaintiff fails to show that her first ground for relief requires reversal or remand.

**Whether the ALJ Erred in his Finding that Plaintiff is Capable
of Performing Past Relevant Work as a Computer Systems Analyst**

RFC refers to the claimant's ability to do "sustained work-related physical and mental activities in a work setting on a regular or continuing basis," eight hours a day, for five days a week or an equivalent work schedule, despite any physical or mental impairments. SSR 96-8p; 20 C.F.R. § 404.1545(a). The ALJ has the responsibility to determine the claimant's RFC at the administrative hearing based on all of the evidence, including the medical records, observations of treating physicians and other acceptable medical sources, and the claimant's own description of her limitations. *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995). The ALJ must resolve conflicts in the evidence and make credibility determinations based on substantial evidence. *Lovelace v. Bowen*, 813 F.2d 55, 59-60 (5th Cir. 1987); *Allen v. Schweiker*, 642 F.2d 799, 801 (5th Cir. 1981) (per curiam). "The [proper] inquiry [] is whether the record, read as a whole, yields such evidence

as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

According to Plaintiff, her job as a computer "specialist" included heavy lifting (Tr. 452); required her to sit for her whole shift or stand for her whole shift with no sit/stand-at-will option (*Id.*); and required her to obtain assistance to perform her job because she was unable to concentrate. (Tr. 458). Plaintiff attempted to work in March of 2005, but she was unable to work. (*Id.*) The last job she attempted required lifting and crawling around on the floor and under the desk to hook up computers. (Tr. 459.) She had to quit after only two days. (*Id.*)

The VE listened to Plaintiff's description of her jobs and decided that the first job she described would be that of a computer systems analyst (sedentary and skilled). (Tr. 475.) He stated that the second job would be primarily that of a computer setup specialist, light and skilled, although at times she would perform it at medium due to lifting, and moving machinery and paper. (*Id.*)

The ALJ's first hypothetical to the VE was that of a claimant who could lift 20 pounds occasionally, 10 pounds frequently, stand or walk for six hours total in an eight-hour day, with the ability to alternate sitting or standing every 30 to 45 minutes. (*Id.*) The capabilities would not include climbing of ladders, balancing, stooping, bending, squatting or kneeling. (*Id.*) There would be no scaffolds, no foot controls, and occasional crouching, the rest of the posturals, occasional. The ALJ asked if such a claimant could perform Plaintiff's past relevant work. (*Id.*) The VE replied that she could perform the computer systems analyst job, but not the specialist job. (*Id.*) Based upon consideration of the entire record, the ALJ found that the first hypothetical incorporated the most restrictive residual functional capacity produced by Plaintiff's medically determinable impairments and assigned that RFC to Plaintiff. (Tr. 19.) The ALJ found that Plaintiff could perform her past

10

relevant work as a computer systems analyst, as that job is generally performed, and that she was not disabled under the Act. (*Id*. 24.)

Plaintiff points out that the VE also testified that to have a sit/stand-at-will option or a changing-positions-at-will option would eliminate all jobs and that no jobs would be available if the claimant would be unable to complete a normal workday or work week without constant interruptions from psychologically-based symptoms or without exhibiting behavioral extremes. Plaintiff supports her argument that the ALJ got her RFC wrong by referring to her history of pain before and after her back surgery and by relying upon Dr. Goldberg's form which the ALJ determined was not entitled to significant weight. Considering the record as a whole, the Court finds that the Commissioner did not err and that substantial evidence supports the finding that Plaintiff is capable of performing her past relevant work as a computer systems analyst, as generally performed.

### Whether the ALJ Erred by Failing to Give Appropriate Weight to Plaintiff's Testimony Concerning her Limitations to Carry Out Daily Activities and to Maintain Concentration and Pace

Plaintiff testified that she suffered from an inability to concentrate during her last employment. (Tr. 21.) Plaintiff stated that she had to lie down three or four times daily depending on her pain. (*Id*.) She also stated she needed to keep her leg elevated to prevent her foot from swelling. (*Id*.) The ALJ identified her as being sincere and genuine regarding her pain and limitations. (*Id*.) However, the Act requires that a claimant's "statement as to pain or other symptoms shall not alone be conclusive evidence of disability." 42 U.S.C. § 423(d)(5)(A). First, pain must be linked to some underlying medical condition. *See* 42 U.S.C. § 423(d)(5)(A) and 20 C.F.R. § 404.1529. Once pain is linked to an objectively verifiable condition, it is not necessary that

the pain which allegedly disables the claimant be proved objectively (*See Floyd v. Bowen,* 833 F.2d 529, 533-34 (5th Cir. 1987) and *Hollis v. Bowen,* 837 F.2d 1378, 1384-85 (5th Cir. 1988) (per curiam)), but the burden of proof remains with the claimant. *Anderson*, 887 F.2d at 633. In this case, the ALJ found that Plaintiff's claimed pain could not be linked to a medically determinable impairment but was supported only by her "lay intuition as to the cause of the symptoms." (Tr. 21.) The ALJ applied the correct legal standard in evaluating Plaintiff's pain and his decision is supported by substantial evidence. *See Hollis*, 837 F.2d at 1384. Plaintiff is not entitled to reversal and remand on the basis of the ALJ's consideration of her allegations of pain.

### **Whether the ALJ or the Appeals Council Failed to Consider the Severity of Plaintiff's Multiple, Long-Lasting Impairments in Finding That She Was Not Disabled**

Plaintiff states that the ALJ failed to adequately consider Plaintiff's daily activities; the location, duration, frequency and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medication; treatment other than medications; and other measures used to relieve symptoms. The ALJ noted that Plaintiff is able to drive three times a week, lives with her mother, watches television, cares for her personal needs, and has no problems with her hands or fingers. (Tr. 19, 21.) He further noted that she takes Lortab, Percocet, or Advil which help her to sleep and ease the pain. (*Id*.) The ALJ noted that Plaintiff used alternative measures to relieve her symptoms, such as keeping her leg elevated, and alternating standing or sitting. The ALJ also considered the effects of Plaintiff's weight problem. (Tr. 23.)

Plaintiff further argues that the ALJ failed to consider evidence of her mental problems. The ALJ considered Plaintiff's testimony that she has depression, sees a psychologist, and does not take medication for mental health. (Tr. 19.) He considered Plaintiff's activities and the opinion of Dr. Fontenot, a treating source, that Plaintiff has no functional limitations from her mental condition.

12

(*Id.*) The ALJ determined that Plaintiff has only "mild" restriction in activities of daily living, social functioning, and concentration, persistence or pace. (*Id.*) The record showed no episodes of decompensation. (*Id.*) The ALJ considered whether the "B" criteria were met and found that they were not satisfied. (*Id.*) The same was true for the "C" criteria. (*Id.*) The ALJ considered the cumulative effect of Plaintiff's severe impairments and did not err in this regard. Nor did the ALJ err in his consideration of whether Plaintiff met listing 12.04 for affective disorders.[2]

## Conclusion

Plaintiff had the burden of proving an inability to perform her past relevant work. *Hollis*, 837 F.2d at 1386. In this case, Plaintiff failed to meet her burden of proof. The record contains substantial evidence that Plaintiff is not precluded from returning to her sedentary, skilled, past relevant work as a computer systems analyst, as the job is usually performed. Accordingly, substantial evidence supports the ALJ's determination that Plaintiff retains the ability to perform her past relevant work and is not disabled under the Act.

## Recommendation

Plaintiff failed to prove that the ALJ applied an incorrect legal standard or that the ALJ's decision that Plaintiff is not disabled within the meaning of the Act was not supported by substantial

---

[2] Plaintiff states in her Prayer for Relief that this case should be remanded for a psychological consultation examination. (Pl.'s Br. at 22.) Although the ALJ has authority to order a consultative examination, the ALJ is not required to do so. 20 C.F.R. §§ 404.1527(f)(2)(iii), 416.927(f)(2)(iii). In this case, the objective medical evidence and other evidence as a whole is sufficient to support the ALJ's mental RFC determination. As such, a consultative examination is not necessary or warranted.

evidence. The Court recommends that the District Court **AFFIRM** the Commissioner's decision.

Signed, February 23, 2009.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).